IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRENE GONZALEZ, et al., etc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 07 C 2507 |
| | ) | |
| MENARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This Court has sought, over an extended series of status hearings, to get counsel for defendant Menard, Inc. ("Menard") to face up to the special problem that is posed by its standard inclusion of a mandatory arbitration clause in its employment contracts when an employee charging employment discrimination actionable under Title VII[1] seeks to raise those issues in a class action--rather than that employee's separate individual lawsuit--because of the widespread nature of the asserted harms. But Menard has previously proved intransigent, apparently seeking to transmute its ubiquitous TV slogan directed to its customers, "Save big money at Menard's," to a message to its employees: "Spend big money to sue Menard's."

Because this Court has expounded at length on the subject

---

[1] Here plaintiffs Irene Gonzalez ("Gonzalez") and Kenneth Stanley ("Stanley") have charged that they were respectively victims of race-based and color-based discrimination, as well as retaliatory conduct, and that those violations on Menard's part were pervasive, justifying the institution and prosecution of a class action in those respects.

over the course of the numerous status hearings, the transcripts of those hearings might best serve to set out a comprehensive statement of the full scope of its reasoning. More recently the parties have submitted their respective drafts of an opinion reflecting this Court's orally expressed views, and Menard's draft (like that submitted in plaintiffs' behalf) finally seems to have recognized the principle that this Court has been urging without success. Nonetheless it seems best, in the interest of completeness, to issue this memorandum opinion and order to provide a less discursive summary of the unreasonableness of Menard's oft-repeated position.

This Court has long honored and enforced contractual undertakings that have chosen the alternative dispute resolution process via arbitration in preference to in-court proceedings. Hence wherever either party to an action on this Court's calendar invokes a contractual arbitration provision, this Court looks to the Federal Arbitration Act. There is one judicially recognized potential exception articulated by the Supreme Court in <u>Green Tree Fin. Corp.-Ala. v. Randolph</u>, 531 U.S. 79, 90, 92 (2000):

> It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum.
>
>    *   *   *
>
> [W]e believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that

> party bears the burden of showing the likelihood of incurring such costs.

And that has, of course, triggered examination of that policy by lower courts (at the appellate level, see, e.g., Livingston v. Assocs. Fin., Inc., 339 F.3d 553 (7th Cir. 2003) and Cooper v. MRM Inv. Co., 367 F.3d 493 (6th Cir. 2004)).

Here Menard has responded to the employment discrimination charges advanced by Gonzalez and Stanley, both individually and as putative class representatives, by moving to refer the dispute to binding arbitration before the American Arbitration Association ("AAA"), relying on the attached Employee Agreements (Exs. A and B) that those employees respectively signed (and that Menard requires of all its employees). As Paragraph 6 of that Employee Agreement reflects, such arbitration must proceed under AAA's "current version of the National Rules for the Resolution of Employment Disputes," which are also said to "govern the fees in this matter." Moreover, in what appears to be a commendable effort by Menard to avoid the potential problem identified in Green Tree, the contractual provision goes on to state "that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court."

But a sharply different prospect appears when AAA's Employment Arbitration Rules are examined in the context of a case such as this one. Parenthetically, even in the arbitration of individual claims where such arbitration is called for in an

individual employment agreement rather than pursuant to an employer-promulgated plan, the AAA schedule of fees and expenses imposes financial burdens on the employee that are substantially above the cost of filing a federal lawsuit (see attached Ex. C, which reproduces a portion of the AAA Employment Arbitration Rules indicated by the marginal marking). But because this opinion focuses on the existence of class-based claims in this action, it is unnecessary to inquire further as to whether the AAA provision is trumped by the limitation on employee-borne expenses specified in Menard's Employee Agreement.[2]

As for the critical issue for purposes of the present ruling, this Court has previously pointed out to both sides' counsel that the AAA not only has a separate set of Supplementary Rules for Class Arbitrations, but that those Supplementary Rules are expressly made applicable to _any_ dispute that arises out of an agreement that provides for arbitration pursuant to _any_ AAA

---

[2] That is not entirely clear: Although the Employee Agreement speaks in terms of "the costs of filing a demand for arbitration" not exceeding the $350 filing fee for a federal court lawsuit, the AAA Rules in Ex. C schedule both an "initial filing fee" and a "case service fee," with the latter "be[ing] incurred for all cases that proceed to their first hearing." Quaere: Are both of those fees encompassed within "the costs of filing a demand," so that they are cabined by the $350 limitation, or does the limitation apply only to the "initial filing fee"? But as suggested in the text, it is unnecessary to address that possible ambiguity in the Employee Agreement at this point because the costs spelled out in Ex. C are beggared by the costs of class arbitration (the subject that controls the current ruling and that is addressed in the next portion of this opinion).

4

rules--indeed, those Supplementary Rules are just as expressly said to govern in the case of any inconsistency between those Rules and any other AAA rules (see the marginally marked provisions of Ex. D attached to this opinion). And in this instance, the costs that would be chargeable to Gonzalez and Stanley for pursuing their existing class claims before the AAA are staggering in relation to their financial circumstances as set out in their affidavits submitted to this Court: Those Supplementary Rules provide for a $3,250 preliminary filing fee and then a supplementary filing fee that, if the Complaint's statement as to the amount in controversy is considered, amounts to an additional $14,000.

When that situation came to light as a result of the submissions that the parties provided in response to this Court's inquiries, this Court sought a possible path to accommodate Menard's desire for arbitration by asking its counsel whether his client would be prepared to treat the very modest limit on an employee's financial exposure in the Employee Agreement as extending to the class claims here, with Menard committing itself to pick up the balance of the AAA tab. That inquiry was met with a flat-out refusal, with Menard's counsel offering the response that a division of those very large class action expenses among the members of a certified class would not be onerous for any individual member of the class, including Gonzalez and Stanley as

class representatives. But the short answer to that "generous" response is that AAA costs are incurred up front, so that Menard's proposed "solution" would force Gonzalez and Stanley to gamble on being successful in obtaining class certification, a highly unfair risk to impose on persons of such modest means (and a risk that does not exist in any federal class action lawsuit where the class-based claim is non-frivolous).

Thus Menard's response equated to an in terrorem effort to discourage this or any other proposed class action, an effort that runs counter to the basic principles that are implicit in Fed. R. Civ. P. 23. This Court nonetheless afforded the parties an opportunity to consider whether conventional principles of severability might save the potential validity of the contractual arbitration provisions only as to the individual claims by Gonzalez and Stanley (even though that would create the awkward and expensive scenario of contemporaneous legal proceedings in both forums--before the AAA as to the individual claims and before this Court as to the class claims).[3] But in this instance the document that Menard has drafted and requires its employees to sign is unitary and all-encompassing in referring <u>all</u>

---

[3] It may be noted that Employee Agreement ¶7 provides for the possibility of severability "to the extent that [a court] believes to be reasonable under the circumstances existing at that time." Menard's counsel responded by citing to a few authorities that this Court has considered and finds inadequate to the task here.

6

employment disputes to the AAA, and the AAA's rules are similarly unitary. Severability is really not an appropriate option in this instance, even apart from the relevant considerations of duplicative activity and the need to tilt lances in two different forums at the same time.

In sum, Menard's motion for referral to AAA arbitration must be and is denied.[4] Gonzalez and Stanley have satisfied the test of demonstrating "prohibitively expensive" arbitration within the teaching of Green Tree. Because Employee Agreement ¶6's arbitration requirement is invalid and unenforceable in the circumstances of this case, the action will go forward in this District Court. this Court's previously-set February 18 status hearing date will remain in effect to discuss further proceedings.

 _(signature)_
 ———————————————
 Milton I. Shadur
 Senior United States District Judge

Date: February 4, 2008

---

[4] Menard's submission of a draft opinion in response to this Court's request does not reflect a withdrawal of that motion.

EMPLOYEE AGREEMENT

In consideration of employment, continued employment, promotion or salary increase by Menard, Inc., or any division thereof, and in further consideration of the compensation paid or to be paid to me, I agree as follows:

1. **Nature of Employment.** I understand that my employment with Menard, Inc. is "at will" and it may be terminated at any time for any reason, or for no reason at all, with or without cause, by Menard, Inc. or me.

2. **Confidential Information.** Menard, Inc. owns and has a valuable property interest in its Confidential Information, which includes, but is not limited to, matters particularly relating to operations of Menard, Inc.'s retail business such as customer, supplier and price lists and agreements, distribution plans, requirements or costs, customer service requirements, costs of providing services, equipment and equipment maintenance costs, materials or records of a proprietary nature, engineering or technical data, and records and policy matters relating to research, finance, accounting, sales, personnel, management, marketing and operations. I understand that Menard, Inc. has expended significant time, effort and expense in developing its Confidential Information and building its business and customer relationships. As an employee of Menard, Inc., I will receive extensive training and become personally acquainted with Menard, Inc.'s Confidential Information. By signing this Agreement, I am agreeing to abide by certain legal obligations and responsibilities with respect to Menard, Inc.'s customers and its Confidential Information in order to protect Menard, Inc.'s investment and my fellow employees.

3. **Use of Confidential Information.** I acknowledge that during the term of my employment, I will be making use of, acquiring or adding to Menard, Inc.'s Confidential Information. In order to protect the Confidential Information, I will not, during the term of my employment with Menard, Inc. or thereafter, in any way utilize any of the Confidential Information except in connection with my employment by Menard, Inc. I will not copy, reproduce or remove from Menard, Inc.'s premises the original or any copies of the Confidential Information, and I will not disclose any of the Confidential Information to anyone. I further agree and represent that by complying with this non-disclosure, to which Menard, Inc. is entitled, my ability to earn a livelihood is not and will not be impaired. My agreement of non-disclosure will survive the termination of this Agreement. I agree that I will comply with the most restrictive provisions specified above which is allowed by applicable state law.

4. **Computer Equipment and Software.** I understand that in the course of my employment, I may use computer equipment provided by Menard, Inc. and may create or use computer software and related documentation that are the property of Menard, Inc. or are licensed and copyrighted by another individual or firm. I agree that I will not reproduce, use or acquire such software without proper authorization and will only use such software in accordance with relevant and appropriate licensing and purchase agreements. I agree not to introduce any software of any type into any of the computer equipment belonging to Menard, Inc. without the express written consent of my division computer department manager, the Chief Information Officer or the President of Menard, Inc. I understand that either the improper use or reproduction of the software or use of computer equipment supplied to me to perform my duties for Menard, Inc. may result in civil and criminal penalties as well as appropriate disciplinary action, including termination. I understand and agree that there is no guarantee of privacy, and Menard, Inc. reserves the right to inspect the computer equipment I use, the files I keep on that equipment, the messages I send or receive, and to audit my activities in any and all fashion while using any computer resources. Under no instance may it be construed that any activity involving the computer and networking equipment, owned by Menard, Inc., and supplied to me for the purpose of completing the objectives of Menard, Inc., be of a personal or private nature no matter the nature, purpose, or circumstance of that activity.

5. **Intellectual Property.** I agree to disclose and assign to Menard, Inc. any and all material of a proprietary nature, particularly including, but not limited to, material subject to protection such as trade secrets, trademarks, patentable ideas, processes or inventions or copyrightable works, which I may conceive, invent, author or discover, either solely or jointly with another or others during the term of this Agreement and which relates to or is capable of use in connection with the subject matter of this Agreement and with the business of Menard, Inc. or any services or products offered, manufactured, used, sold or being developed by Menard, Inc. at the time the material is developed, which shall be considered "work made for hire," and shall become and remain the sole property of Menard, Inc. I will, upon request of Menard, Inc., either during or at any time after the termination of this Agreement, execute and deliver all papers, including applications for patents and registrations for copyrights, and do such other legal acts (entirely at Menard, Inc.'s expense) as may be necessary to obtain and maintain proprietary rights in any and all countries and to vest title thereto in Menard, Inc.

6. **Remedy.** I agree that all problems, claims, and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. Problems, claims, or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act, and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common law.

These claims shall be resolved by binding arbitration with the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 252, Chicago, Illinois 60601-7601 under its current version of the National Rules for the Resolution of Employment Disputes. I understand that the AAA National Rules for the Resolution of Employment Disputes shall govern the fees in this matter, and that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court. A copy of the National Rules for the Resolution of Employment Disputes and fee schedule of the American Arbitration Association may be obtained by contacting it at the address listed above.

I agree that all arbitrators selected shall be attorneys. This provision shall supersede any contrary rule or provision of the forum state.

Nothing in this Agreement infringes on my ability to file a claim or charge of discrimination with the U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, filing a lawsuit in Federal or state court in their own name, or taking any other action authorized under these statutes. I understand that I have the right to participate in such action.

Menard, Inc. is engaged in commerce using U.S. Mail and telephone service. Therefore, the Agreement is subject to the Federal Arbitration Act, U.S.C. Sections 1-14 as amended from time to time.

7. **Severability.** I agree that if the scope or enforceability of any part of this Agreement is in any way disputed at any time, a court or arbitrator may modify and enforce the Agreement to the extent that it believes to be reasonable under the circumstances existing at that time.

THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE PRESIDENT OF MENARD, INC.

Accepted this 7th day of May, 2004.

MENARD, INC.

By: _[signature]_
_Chuck Tompkins_
print name
Title: _Plant Manager_

_Irene Gonzales_
signature of employee
_Irene Gonzales_
print name
Address: _1308 Dearborn_
_Aurora, IL  60505_
SS#: _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_

05/04   ORIGINAL TO G.O. EMPLOYMENT OFFICE                     YELLOW COPY TO EMPLOYEE

EXHIBIT A

## EMPLOYEE AGREEMENT

In consideration of employment, continued employment, promotion or salary increase by Menard, Inc., or any division thereof, and in further consideration of the compensation paid or to be paid to me, I agree as follows:

1. **Nature of Employment.** I understand that my employment with Menard, Inc. is "at will" and it may be terminated at any time for any reason, or for no reason at all, with or without cause, by Menard, Inc. or me.

2. **Confidential Information.** Menard, Inc. owns and has a valuable property interest in its Confidential Information, which includes, but is not limited to, matters particularly relating to operations of Menard, Inc.'s retail business such as customer, supplier and price lists and agreements, distribution plans, requirements or costs, customer service requirements, costs of providing services, equipment and equipment maintenance costs, materials or records of a proprietary nature, engineering or technical data, and records and policy matters relating to research, finance, accounting, sales, personnel, management, marketing and operations. I understand that Menard, Inc. has expended significant time, effort and expense in developing its Confidential Information and building its business and customer relationships. As an employee of Menard, Inc., I will receive extensive training and become personally acquainted with Menard, Inc.'s Confidential Information. By signing this Agreement, I am agreeing to abide by certain legal obligations and responsibilities with respect to Menard, Inc.'s customers and its Confidential Information in order to protect Menard, Inc.'s investment and my fellow employees.

3. **Use of Confidential Information.** I acknowledge that during the term of my employment, I will be making use of, acquiring or adding to Menard, Inc.'s Confidential Information. In order to protect the Confidential Information, I will not, during the term of my employment with Menard, Inc. or thereafter, in any way utilize any of the Confidential Information except in connection with my employment by Menard, Inc. I will not copy, reproduce or remove from Menard, Inc.'s premises the original or any copies of the Confidential Information, and I will not disclose any of the Confidential Information to anyone. I further agree and represent that by complying with this non-disclosure, to which Menard, Inc. is entitled, my ability to earn a livelihood is not and will not be impaired. My agreement of non-disclosure will survive the termination of this Agreement. I agree that I will comply with the most restrictive provisions specified above which is allowed by applicable state law.

4. **Computer Equipment and Software.** I understand that in the course of my employment, I may use computer equipment provided by Menard, Inc. and may create or use computer software and related documentation that are the property of Menard, Inc. or are licensed and copyrighted by another individual or firm. I agree that I will not reproduce, use or acquire such software without proper authorization and will only use such software in accordance with relevant and appropriate licensing and purchase agreements. I agree not to introduce any software of any type into any of the computer equipment belonging to Menard, Inc. without the express written consent of my division computer department manager, the Chief Information Officer or the President of Menard, Inc. I understand that either the improper use or reproduction of the software or use of computer equipment supplied to me to perform my duties for Menard, Inc. may result in civil and criminal penalties as well as appropriate disciplinary action, including termination. I understand and agree that there is no guarantee of privacy, and Menard, Inc. reserves the right to inspect the computer equipment I use, the files I keep on that equipment, the messages I send or receive, and to audit my activities in any and all fashion while using any computer resources. Under no instance may it be construed that any activity involving the computer and networking equipment, owned by Menard, Inc., and supplied to me for the purpose of completing the objectives of Menard, Inc., be of a personal or private nature no matter the nature, purpose, or circumstance of that activity.

5. **Intellectual Property.** I agree to disclose and assign to Menard, Inc. any and all material of a proprietary nature, particularly including, but not limited to, material subject to protection such as trade secrets, trademarks, patentable ideas, processes or inventions or copyrightable works, which I may conceive, invent, author or discover, either solely or jointly with another or others during the term of this Agreement and which relates to or is capable of use in connection with the subject matter of this Agreement and with the business of Menard, Inc. or any services or products offered, manufactured, used, sold or being developed by Menard, Inc. at the time the material is developed, which shall be considered "work made for hire," and shall become and remain the sole property of Menard, Inc. I will, upon request of Menard, Inc., either during or at any time after the termination of this Agreement, execute and deliver all papers, including applications for patents and registrations for copyrights, and do such other legal acts (entirely at Menard, Inc.'s expense) as may be necessary to obtain and maintain proprietary rights in any and all countries and to vest title thereto in Menard, Inc.

6. **Remedy.** I agree that all problems, claims, and disputes experienced within my work area shall first be resolved as outlined in the Team Member Relations section of the Grow With Menards Team Member Information Booklet which I have received. If I am unable to resolve the dispute by these means, I agree to submit to final and binding arbitration. Problems, claims, or disputes subject to binding arbitration include, but are not limited to: statutory claims under 42 U.S.C. § 1981, the Age Discrimination in Employment Act, Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991, Americans with Disabilities Act, Family Medical Leave Act, and non-statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under state laws or common law.

These claims shall be resolved by binding arbitration with the American Arbitration Association ("AAA") located at 225 North Michigan Avenue, Suite 252, Chicago, Illinois 60601-7601 under its current version of the National Rules for the Resolution of Employment Disputes. I understand that the AAA National Rules for the Resolution of Employment Disputes shall govern the fees in this matter, and that the costs of filing a demand for arbitration will not exceed the costs of filing a civil complaint in federal court. A copy of the National Rules for the Resolution of Employment Disputes and fee schedule of the American Arbitration Association may be obtained by contacting it at the address listed above.

I agree that all arbitrators selected shall be attorneys. This provision shall supersede any contrary rule or provision of the forum state.

Nothing in this Agreement infringes on my ability to file a claim or charge of discrimination with the U.S. Equal Employment Opportunity Commission or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, filing a lawsuit in Federal or state court in their own name, or taking any other action authorized under these statutes. I understand that I have the right to participate in such action.

Menard, Inc. is engaged in commerce using U.S. Mail and telephone service. Therefore, the Agreement is subject to the Federal Arbitration Act, U.S.C. Sections 1-14 as amended from time to time.

7. **Severability.** I agree that if the scope or enforceability of any part of this Agreement is in any way disputed at any time, a court or arbitrator may modify and enforce the Agreement to the extent that it believes to be reasonable under the circumstances existing at that time.

**THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES. I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE PRESIDENT OF MENARD, INC.**

Accepted this _15_ day of _February_, 20 _06_

MENARD, INC.

By: _Anna Christensen_ (signature)
_Anna Christensen_ (print name)
Title: _Personnel_

Signature of employee: _Kenneth Stahl_
Print name: _Kenneth Stahl_
Address: _736 E. 84th Pl_
_Chicago, IL, 60619_
SS#: _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_

05/04    ORIGINAL TO G.O. EMPLOYMENT OFFICE        YELLOW COPY TO EMPLOYEE

EXHIBIT B

provides that the employer pay more.

There shall be no filing fee charged for a counterclaim.

(ii) Hearing Fees

For each day of hearing held before a single arbitrator, an administrative fee of $300 is payable by the employer.

For each day of hearing held before a multi-arbitrator panel, an administrative fee of $500 is payable by the employer.

There is no AAA hearing fee for the initial Arbitration Management Conference.

(iii) Postponement/Cancellation Fees

A fee of $150 is payable by a party causing a postponement of any hearing scheduled before a single arbitrator.

A fee of $250 is payable by a party causing a postponement of any hearing scheduled before a multi-arbitrator panel.

(iv) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the employer.

(v) Abeyance Fee

Parties on cases held in abeyance for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed.

(vi) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer.

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts:

The AAA's Commercial Fee Schedule, below, will apply to disputes arising out of individually-negotiable employment agreements and contracts, even if such agreements and contracts reference or incorporate an employer-promulgated plan.

The administrative fees of the AAA are based on the amount of the claim or counterclaim. Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on the most recent biography sent to the parties prior to appointment. Unless the parties agree otherwise, arbitrator compensation, and expenses as defined in section (v) below, shall be

Page 19


Exhibit C page 2

borne equally by the parties and are subject to reallocation by the arbitrator in the award.

(i) Filing Fees and Case Service Fees

An initial filing fee is payable in full by the filing party when a claim, counterclaim, or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred. However, if the Association is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
| --- | --- | --- |
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 | * | * |
| Nonmonetary Claims** | $3,250 | $1,250 |

\*\* *This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee. Fee Schedule for Claims in Excess of $10 MillionThe following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.*

Fee Schedulefor Claims in Excess of $10 Million

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
| --- | --- | --- |
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

Supplementary Rules for Class ARBITRATIONS
Effective Date October 8, 2003

1. Applicability
2. Class Arbitration Roster and Number of Arbitrators
3. Construction of the Arbitration Clause
4. Class Certification
5. Class Determination Award
6. Notice of Class Determination
7. Final Award
8. Settlement, Voluntary Dismissal, or Compromise
9. Confidentiality; Class Arbitration Docket
10. Form and Publication of Awards
11. Administrative Fees and Suspension for Nonpayment
12. Applications to Court and Exclusion of Liability

1. Applicability

(a) These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class, and shall supplement any other applicable AAA rules. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class.

(b) Where inconsistencies exist between these Supplementary Rules and other AAA rules that apply to the dispute, these Supplementary Rules will govern. The arbitrator shall have the authority to resolve any inconsistency between any agreement of the parties and these Supplementary Rules, and in doing so shall endeavor to avoid any prejudice to the interests of absent members of a class or purported class.

(c) Whenever a court has, by order, addressed and resolved any matter that would otherwise be decided by an arbitrator under these Supplementary Rules, the arbitrator shall follow the order of the court.

2. Class Arbitration Roster and Number of Arbitrators

(a) In any arbitration conducted pursuant to these Supplementary Rules, at least one of the arbitrators shall be appointed from the AAA's national roster of class arbitration arbitrators.

(b) If the parties cannot agree upon the number of arbitrators to be appointed, the dispute shall be heard by a sole arbitrator unless the AAA, in its discretion, directs that three arbitrators be appointed. As used in these Supplementary Rules, the term "arbitrator" includes both one and three

Page 1

EXHIBIT D